# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| JUDY HODGE, on behalf of herself and the ESTATE OF LARRY HODGE, | ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) ) No. 3:16-cv-317 |
| BLOUNT COUNTY, TENNESSEE; and JAMES BERRONG, JEFF CLARK, DOUG DAVIS, JAMES LONG, DOUG MOORE, RON TALBOTT, and HENRY VAUGHN in their individual capacities, | ) Reeves/Shirley ) ) ) ) ) |
| *Defendants*. | ) |

## Memorandum Opinion and Order

Before the Court are motions to dismiss filed by Blount County and by the Officer Defendants. Judy Hodge claims that her ailing husband Larry was beat up during a traffic stop by Henry Vaughn, a Blount County police officer. After being beaten, Vaughn and Officer Doug Davis arrested the bleeding Larry and refused to take him to a hospital. Larry's injuries worsened his preexisting medical conditions, hastening his death.

This beating, Hodge asserts, was unconstitutional and was caused by unconstitutional policies and practices maintained by Hodge's supervisors. These supervisors included Sheriff James Berrong, Deputy Chief Ron Talbott, Deputy Chief James Long, and Patrol Captain Jeff Clark. And when Hodge's supervisors learned of the beating, Officer Doug Moore conducted a sham investigation that led to no consequences.

This suit followed in June 2016, and a nine-count amended complaint followed in February 2017. Defendants now ask the Court to dismiss all claims against them. For the following reasons, these motions will be granted in part and denied in part.

1

## II

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint states a facially plausible claim, the Court takes a two-step approach. *Id.* at 679. First, it separates the complaint's factual allegations and legal conclusions. All factual allegations, and only the factual allegations, are taken as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Second, the Court asks whether these factual allegations amount to a plausible claim for relief. *Id.* at 555. The allegations do not need to be highly detailed, but they must do more than simply recite the elements of the offense. *Id.* Specifically, the complaint must plead facts permitting a reasonable inference that the defendant is liable for the alleged conduct. *Id.* If this is not done, the claim will be dismissed. *Id.* at 570.

## III

The Officer Defendants offer two reasons for granting their motion to dismiss. First, some of Hodge's claims have not been properly stated. And even if they were, the Officers are protected by qualified immunity against all counts.

The doctrine of qualified immunity shields public officers from suit as long as their conduct did not violate the plaintiff's clearly established rights. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017). There are thus two questions involved: whether the officer violated the plaintiff's rights, and whether those rights were clearly established. *See City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). A right is clearly established when a reasonable officer in the defendant's shoes would have known that his conduct violated the plaintiff's right. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017). A reasonable officer would have known this if "existing precedent" placed the issue "beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). And when determining whether such precedent exists, the court looks at the particularized facts of the case, not at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

### A

Under Counts 1 and 2 of the amended complaint, Hodge asserts that Vaughn used excessive force when arresting Larry, in violation of his Fourth Amendment right against unreasonable seizure. She alleges that Vaughn used excessive force by pointing his gun at Larry and by forcibly arresting him. Vaughn asserts that, under the facts as stated in the complaint, he is entitled to qualified immunity.

Under the facts as stated in the complaint, Vaughn is not entitled to qualified immunity. This answer flows directly from *Brown v. Lewis*, 779 F.3d 401 (6th Cir. 2015), decided four months before the events at issue here. In *Brown*, a man who sounded drunk called 911 from a home and vaguely requested police. *Id.* at 407. When he put down the phone he did not hang up, and the 911 dispatcher heard him make a joking threat against the woman who had not yet shown up to give him a ride. *Id.* at 407–08. The dispatcher sent an officer to check out the situation at the home. *Id.* at 409.

At the same time, two women were driving in one car to the home. *Id.* at 408. The driver was Kishna Brown, the plaintiff. *Id.* at 407. Brown dropped off her friend at the home and drove away. *Id.* The officer watching the home thought that Brown was giving the man a ride. *Id.* at 409. He called two other police cruisers, and they all pulled Brown over. *Id.* One officer opened the rear passenger door to Brown's car and pointed an AR-15 at her head. *Id.* at 408. As Brown asked "What did I do?" officers cursed at her and told her to get out of the car. *Id.* She moved to exit her car, but before her foot could touch the ground, two officers grabbed her by her sweatshirt hood, threw her to the pavement, and handcuffed her. *Id.* at 408. They let Brown go after ten minutes. *Id.* at 409.

Brown sued the officers for wrongful seizure and excessive force, among other things. *Id.* at 410. The officers moved for summary judgment, arguing that they were entitled to qualified immunity. *Id.* The district court denied the motion. *Id.* It found that the force described by Brown was constitutionally excessive, and that this excessiveness was clearly established. *Id.* The officers appealed. *Id.*

3

The Sixth Circuit affirmed. *Id.* at 421. On the wrongful-seizure claim, the court began by noting that a seizure occurs when a reasonable person would not think that he could walk away. *Id.* at 412. And there are two types of seizure, which are given different types of scrutiny. *Id.* Under the first type, an officer detains someone for a short time for investigatory purposes. *Id.* The officer may do so if, under the circumstances, he has a "particularized and objective basis for suspecting" that the person has committed a crime "based on specific and articulable facts." *Id.* For such a stop to be reasonable, the degree of intrusion into the person's security must be "reasonably related in scope to the situation at hand." *Id.* If the length and manner of the stop, including the force used, are not reasonably related to the basis for the initial intrusion, then the stop becomes an arrest—the second kind of seizure—requiring probable cause. *Id.*

Under this framework, the court found that the officers had violated Brown's Fourth Amendment right against unreasonable seizures. *Id.* at 416. It concluded that the length and manner of the initial stop were not reasonably related in scope to the situation at hand. *Id.* at 414. "Courts consider the length of the detention, the manner in which it is conducted, and the degree of force used in determining whether an investigative stop is reasonably related to the basis for the original intrusion." *Id.* The officers had wrongly continued to detain Brown after learning that the man was not in her car, and Brown's behavior did not give the officers any reason to believe that she was dangerous. *Id.* The seizure thus grew into an arrest, which the officers lacked probable cause for. *Id.* at 415.

The court further found that Brown's right against wrongful seizure was clearly established. *Id.* at 416. It quoted a 2006 case which stated, "'The law is clear that once the purposes of the initial traffic stop are completed, there is no doubt that the officer cannot further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the reasonable suspicion to justify a further detention.'" *Id.* (quoting *Smoak v. Hall*, 460 F.3d 768, 782 (6th Cir. 2006)). And once the officers realized that Brown was alone in the car, they had no more reason to hold her. *Id.* Thus, they were not entitled to qualified immunity on the wrongful-seizure claim.

Count 1 of Hodge's complaint strongly mirrors this claim in *Brown*.[1] According to the complaint, Larry's side mirror struck another car's side mirror as they passed each other. Larry then tried to talk to the woman, but every time he got close to her car she would drive slightly away from him. So Larry gave up and drove off. The woman in the other car then called 911 to report that someone had broken her mirror and driven off. Thus, when police were looking for Larry's car, they were looking for someone who at most could be charged with hit and run causing property damage. *See* TENN. CODE ANN. § 55-10-102. But under Tennessee law, someone suspected of this offense must be ticketed, not arrested. *Id.* § 55-10-207(b)(1). Larry, then, was not even wanted for an arrestable offense. And when Vaughn pulled Larry over, Larry sat motionless in his seat, hands at 10 and 2. Yet Vaughn approached Larry's car with his gun drawn and pointed at Larry's head. As in *Brown*, this use of force was not reasonably related in scope to the situation at hand.

To be sure, *Brown* is not exactly on point. In *Brown*, the plaintiff tried to get out of the car when she was ordered to, but then was thrown to the ground by police. Here, Larry did not comply with Vaughn's order to get out of the car. Instead, Larry responded with profanity and said "I'm not getting out." But again, Vaughn had no business trying to arrest Larry anyway. Under state law, Vaughn should have given Larry a ticket, not arrested him at gunpoint. What's more, Vaughn was driving an unmarked white pickup—hardly what people think when they hear "cop car"—and he was wearing nothing that would identify him as a Blount County officer. Nor did he identify himself as an officer. So as far as Larry could tell, a stranger had pulled him over, pointed a gun at his head, and was trying to force him out of the car. A reasonable officer in that situation would at least know to identify himself as an officer. *Cf. Yates v. City of Cleveland*, 941 F.3d 444, 447 (6th Cir. 1991) ("An officer who intentionally enters a dark hallway in the entrance of a private residence in the middle of the night, and fails to give any indication of his identity, is more than merely negligent.").

---

[1] Although Hodge labeled Count 1 as Excessive Force, its substance better resembles a wrongful-seizure claim. *See Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (noting that the label applied to a pleading does not determine the nature of the cause of action).

Finally, as the *Brown* court noted, it's clear that an officer cannot detain someone during a traffic stop once the purposes of the stop are completed, unless something happened to justify further detention. Here, the purposes of the stop never even began, as Vaughn went straight to arresting Larry without ticketing him. At this stage of litigation, Vaughn is not entitled to qualified immunity on Count 1 of Hodge's complaint.

As for the wrongful-seizure claim, the *Brown* court noted that the Fourth Amendment "protects individuals from the use of excessive force during an arrest or investigatory stop." 779 F.3d at 418. To determine whether the force was excessive, courts must look to the reasonableness of the force in light of the circumstances before the defendants. *Id.* And three factors determine reasonableness: the severity of the suspected crime, whether the suspect poses and immediate threat to officers or others, and whether she is actively resisting arrest or trying to flee. *Id.* The court held that, under these factors, the officers' use of force was excessive. *Id.* Brown fully complied with the officers' orders, they saw no weapons in her car, and her hands stayed in clear view. *Id.*

The court also found that this right was well established. It noted that, "since at least 2009, the use of violence against a subdued and non-resisting individual has been clearly established as excessive, regardless of whether the individual had been placed in handcuffs." *Id.* at 419.

This claim largely resembles the facts alleged in Count 2 of Hodge's complaint. Larry was suspected of a Class C misdemeanor that warranted a ticket, not an arrest. And Larry, a 67-year-old man, was sitting motionless in his seat, hands at 10 and 2. These two factors point toward a constitutional violation. The only twist here is the third factor: Larry was actively resisting arrest. But again, Vaughn should not have been trying to arrest him in the first place. And Vaughn failed to identify himself as an officer before forcing Larry out of the car. *See Doornbos v. City of Chicago*, ___ F. 3d ___, 2017 WL 3574812, at *1 (7th Cir. Aug. 18, 2017) ("In all but the most unusual circumstances . . . plainclothes officers must identify themselves when they initiate a stop."). So while *Brown* is not exactly on point, Hodge does allege facts implying that Vaughn violated Larry's right against excessive force.

And this right was clearly established. The Sixth Circuit has declared that, when a suspect's hands are free and he has "done no more than made a minor stubbornness," it is excessive for an officer to restrain the suspect "by tackling, stepping on, and punching him." *Malory v. Whiting*, 489 F. App'x 78, 85 (6th Cir. 2012). Hodge alleges that Vaughn grabbed Larry, threw him face-first to the ground, and punched him. On Count 2 of the complaint, Vaughn is not entitled to qualified immunity at this point in litigation.

**B**

Count 3 alleges that several defendants failed to train and supervise Vaughn, and that they acquiesced in his conduct. Hodge brings this claim against Sheriff Berrong, Deputy Chief Ron Talbott, Deputy Chief James Long, Patrol Captain Clark, and Lieutenant Doug Moore. They contend that Hodge has failed to state a claim against them and that, even if she has, they are entitled to qualified immunity.

Count 3 fails to state a claim against these defendants. A supervisory officer's failure to supervise "is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (cleaned up). "Having the right to control the offending employee is not enough, simply being aware of the misconduct is not enough, and even administrative approval of an action later found to be retaliatory, without more, is not enough." *King v. Zamiara*, 680 F.3d 686, 696–97 (6th Cir. 2012). The Court will address each defendant in turn.

**1. Hodge Has Not Stated a Claim Against Sheriff Berrong**

Hodge has not stated a claim against Sheriff Berrong. She alleges that Berrong failed to train Vaughn, failed to properly investigate the allegations of excessive force, and used a sham investigation to cover up any excessive force. [D. 51 ¶ 110]. Berrong maintains that Hodge has failed to properly state these claims.

The Court agrees with Berrong. For the failure-to-train claim, Hodge asserts that there was no evidence of training revealed in Vaughn's personnel file. That, plus his position as evidence technician, makes it "highly unlikely" that Vaughn receives training in making traffic stops. [*Id.* ¶ 66]. She also points out that Vaughn was hired in 1998 and, after two incidents in 2005, taken off patrol duty and assigned to be a property and evidence custodian. [*Id.* ¶¶ 60–64]. Thus, Hodge concludes, Sheriff Berrong failed to train Vaughn in making proper traffic stops.

These allegations do not show a failure to train. Hodge must show that either (1) Vaughn's excessive force was part of a pattern of misconduct; or (2) there was essentially a complete failure to train the Blount County police force, or training was so "reckless or grossly negligent" that future misconduct was "almost inevitable or would properly be characterized as substantially certain to occur." *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982) (cleaned up). And Hodge's allegations do not show that Vaughn's traffic stop was part of a pattern of misconduct. To prove a pattern of misconduct, the plaintiff must show that the supervisor was "confronted with misconduct that was obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 440–41 (6th Cir. 2002) (cleaned up). The two incidents in 2005 do not meet this burden.

Nor do these allegations prove a complete failure to train the police force. At most they "sketch the blurred lines" of a failure to train only one officer. *Colson v. City of Alcoa*, No. 3:16-cv-377, 2017 WL 1730911, at *11 (E.D. Tenn. May 2, 2017) (Jordan, J.). But they fall far short of showing that Sheriff Berrong failed to train his police force.

Hodge has also failed to show that Berrong's lack of follow-up after the incident amounted to a constitutional violation. She claims that, once the Blount County Sheriff's Office got wind of what had happened, it put Moore in charge of the investigation. Moore then conducted a sham investigation, during which he handled the matter with kid gloves and told his supervisors that he simply wanted Hodge's family to feel like he was conducting a thorough investigation. [D. 51 ¶¶ 104–107]. Nowhere, though, does Hodge allege that Berrong had anything to do with Moore's investigation. He says only that "it is highly unlikely" that Vaughn's use of force "would not be

8

reviewed by Sheriff Berrong." [*Id.* ¶ 110]. But this is not a factual allegation. *See Colson*, 2017 WL 1730911, at *8. Hodge has not alleged that Berrong even knew about Moore's investigation. And even if Berrong did know about it, Hodge must show more than "mere tacit approval of the goings on." *Gregory v. City of Louisville*, 444 F.3d 725, 761 (6th Cir. 2006). She has not done so.

Hodge has also failed to state a claim against Berrong for using a sham investigation to cover-up Vaughn's use of force. Again, even if Moore's investigation amounted to a constitutional violation, Hodge has not alleged that Berrong had anything to do with it.

Last, Hodge seems to claim that Berrong implicitly authorized Vaughn's use of force by not punishing him. Failure to act, however, is not implicit authorization. *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012).

Essentially, Hodge

> intones the common-law parlance "implicitly authorized, approved, or knowingly acquiesced," summarizes Sheriff Berrong's responsibility to supervise and train his subordinates . . . and conclusorily refers to unidentified acts of ratification and rubber stamping. These allegations consist of nothing more than canned recitations of the common-law labels associated with supervisory liability. They are devoid of facts.

*Colson*, 2017 WL 1730911, at *8 (cleaned up). She has failed to state a claim against Berrong.

### 2. Hodge Has Not Stated a Claim Against Deputy Chief Ron Talbott, Deputy Chief James Long, or Patrol Captain Clark

After Moore completed his investigation, he emailed Talbott, Long, and Clark, summarizing the results of his investigation. Moore said that Vaughn's use of force was justified and that he had done a great job in arresting Larry. The email also suggested that Moore did not conduct a serious investigation. [D. 51 ¶¶ 105–107]. Yet these three supervisors took no action in response to Moore's email. Hodge says that this failure to act amounts to implicit authorization of Moore's

9

sham investigation. [*Id.* ¶ 109]. But assuming that Moore's investigation was constitutionally deficient, a supervisor's failure to act does not show authorization or even knowing acquiescence. *Frodge*, 501 F. App'x at 532; *Shehee*, 199 F.3d at 300. She has not stated a claim against them.

### 3. Hodge Has Not Stated a Claim Against Moore

Finally, Hodge has not stated a claim against Moore. She alleges that his investigation was a sham, and that his failure to undertake a good-faith investigation violated Larry's rights.

For starters, Hodge has not alleged that the internal investigation was a cover-up. Cover-ups require affirmative efforts to conceal the truth, whether by offering false facts or by failing to offer true facts. *See Coley v. Lucas Cty.*, 799 F.3d 530, 540 (6th Cir. 2015); *Linden v. Washtenaw Cty.*, 167 F. App'x 410, 427 (6th Cir. 2006); *Willneff v. Macomb Cty.*, No. 08-cv-12407, 2011 WL 37968, at *4–5 (E.D. Mich. Jan. 5, 2011). Hodge has not made any claims about the substance of Moore's investigation and report to his higher-ups. Instead, she claims that Moore undertook the investigation as a mere formality and did not actually try to get to the bottom of the matter. In other words, Hodge claims that the investigation was a sham.

But even if it was a sham, that did not violate any of Larry's clearly established rights. The Court has been unable to find a case holding an officer liable in his individual capacity when he promised to conduct an internal investigation and then didn't make an honest effort. Existing precedent has therefore not placed the issue beyond debate. *Mullenix*, 136 S. Ct. at 308. Hodge has not stated a claim against Moore. The Court does not decide whether Moore violated Larry's rights. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Count 3 does not state a claim against anyone, so it will be dismissed.

### C

Count 4 is a *Monell*[2] claim against Blount County. Hodge asserts that Blount County is liable in three ways: it failed to train and supervise its officers in the proper use of force; it failed to

---

[2] *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

investigate allegations of excessive force; and it attempted a cover-up by letting Vaughn off the hook.

Hodge has not stated a proper *Monell* claim. On the second and third allegations, the Court has explained above that no County police officer violated Larry's rights by failing to investigate Vaughn's use of force or by engaging in a cover-up. That leaves only the claim that Blount County failed to train and supervise its officers in the proper use of force.

Hodge has not stated a claim here. To impose § 1983 liability on a local government, the plaintiff must prove that the officer acted according to official policy. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A failure to train and supervise constitutes official policy only if the failure amounts to deliberate indifference to the rights of those who come into contact with the local government's employees. *Savoie v. Martin*, 673 F.3d 488, 494–95 (6th Cir. 2012). "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the employer has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* at 495 (cleaned up). Hodge's complaint is devoid of a history of abuse such that Blount County would be clearly on notice about any deficiencies. Count 4 will therefore be dismissed.

### D

The Officer Defendants have moved to dismiss Count 5, and Hodge has said that she will not oppose that part of the motion. Count 5 will therefore be dismissed.

### E

Count 6 alleges assault and battery against Vaughn, along with liability against the County under Tennessee Code § 8-8-302. Assault has two elements:

- an intentional attempt, or the unmistakable appearance of an attempt, to harm someone or frighten someone; and

> • the present ability, or the unmistakable appearance of the present ability, to do that harm or cause that fright.

T.P.I. Civil 8.01 (2017) (citing *Hughes v. Metro. Gov. of Nashville*, 340 S.W.3d 352 (Tenn. 2011); and *Huffman v. State*, 292 S.W.2d 738 (Tenn. 1956)). According to Hodge, when Vaughn pulled Larry over, Vaughn pulled his gun and pointed it at Larry. And when Larry refused to get out of his truck, Vaughn opened Larry's door to pull him out. [D. 51 ¶¶ 47–49, 144]. Hodge has stated a claim of assault against Vaughn.

Hodge has also stated a claim of battery against Vaughn. A battery is an intentional, unlawful, and harmful or offensive physical contact with someone. T.P.I. Civil 8.02 (2017) (citing *Huffman* and *Kline ex rel. Kline v. Jordan*, 685 S.W.2d 295 (Tenn. Ct. App. 1984)). The intent is merely the intent to do the thing that caused the harm. *Id.* Hodge asserts that, after Vaughn opened Larry's truck door to pull him out, Vaughn grabbed Larry by his shirt collar and threw him to the ground, punched him, and twisted his arms behind his back. [D. 51 ¶¶ 49, 51, 144]. These allegations establish a claim of battery.

To be sure, police officers do not commit assault and battery just because they arrest someone. But Tennessee Code § 40-7-103 defines in detail when an officer can arrest someone without a warrant. And when Vaughn arrested Larry, the statute did not apply to the situation. Vaughn thus had no legal basis for arresting Larry—in fact, the law said that Vaughn had to ticket Larry instead of arresting him. Count 6 will not be dismissed as to Vaughn.

Nor will it be dismissed as to Blount County. Anyone hurt by a police officer can sue the county, as long as the officer was acting under color of his office. TENN. CODE ANN. § 8-8-302. An officer acts under color of his office when he "acts or purports to act in an official capacity or takes advantage of such actual or purported capacity." *Currie v. Haywood Cty.*, No. W2010-453-COA-R3CV, 2011 WL 826805, at *6 (Tenn. Ct. App. Mar. 10, 2011) (cleaned up) (surveying case law interpreting "under color of office"). When Vaughn arrested Larry, he was at least taking advantage of his purported official capacity. Hodge has stated a claim here against Blount County.

**F**

Count 7 alleges intentional infliction of emotional distress against Vaughn. To state a claim of IIED, Hodge must assert

- intentional conduct;

- that is so outrageous that it is not tolerated by civil society;

- that results in serious mental injury.

*Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). As recounted above, Hodge claims that Vaughn pulled Larry over for a ticketable driving offense, did not identify himself as a police officer, pulled his gun and pointed it at Larry, yelled at him to get out of his truck, grabbed him from the driver's seat and threw him to the pavement, punched him, and then cuffed him. These allegations state a plausible claim on the first two elements.

Hodge has also stated a plausible claim on the third element. She alleges that, as a result of Vaughn's use of force, Larry's mental state—already impacted by dementia from multiple strokes—declined faster. She also asserts that Larry began suffering from nightmares, insomnia, depressions, and anxiety. [D. 51 ¶¶ 59, 83]. Hodge has stated a plausible claim of IIED against Vaughn.

**G**

Count 8 alleges negligence against all Individual Defendants, in violation of the Tennessee Governmental Tort Liability Act, Tennessee Code §§ 29-20-101 to -408. Hodge asserts that the officers owed Larry a duty to use appropriate force against him, which they breached.[3] Defendants contend that Hodge has not properly stated a claim against each of them individually. They also maintain that, except for Vaughn, the facts do not state a negligence claim against any of them.

These claims must be dismissed. As it appears in the Tort Liability Act, the government is liable for an employee's negligence unless the injury arises out of "civil rights." TENN. CODE ANN.

---

[3] Hodge also makes a TGTLA claim based on failure to provide medical care, but she has indicated that she will not oppose dismissal of the underlying claim for failing to provide medical care.

§ 29-20-205(2).[4] This Court has interpreted this passage to mean that, under the Act, a violation of civil rights is an intentional tort. *Branum v. Loudon County*, No. 3:11-cv-351, 2014 WL 640634, at *11 (E.D. Tenn. Feb. 19, 2014) (Varlan, C.J.); *Brooks v. Sevier County*, 279 F. Supp. 2d 954, 960 (E.D. Tenn. 2003) (Varlan, C.J.). One's right against excessive force is enshrined in the Fourth Amendment. *See, e.g.*, *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017). One's right against excessive force, then, is a civil right. So under the Tort Liability Act, excessive force is an intentional tort. Intentional torts and negligence are different "in degree, in kind, and in society's view of the relative culpability of each act." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 86 (Tenn. 2001) (quoting *Turner v. Jordan*, 957 S.W.2d 815, 823 (Tenn. 1997)). Thus, Hodge cannot claim that the officer defendants were negligent in allowing Vaughn to use the force he did against Larry. She has failed to state a claim of negligence.

## H

Last, Hodge alleges loss of consortium against Vaughn. Loss of consortium, though its own cause of action, is an element of damages when the other spouse is injured. *See, e.g.*, *McPeek v. Lockhart*, 174 S.W.3d 751, 755 (Tenn. Ct. App. 2005) (discussing TENN. CODE ANN. § 25-1-106). Because Hodge has plausibly stated several claims on behalf of her now-deceased husband, she has plausibly stated her own claim for loss of consortium.

## I

The only claims left against the officer defendants are Counts 1, 2, 6, 7, and 9 against Vaughn. Hodge seeks punitive damages on Count 7, the IIED claim. To win punitive damages under Tennessee law, the plaintiff must prove by clear and convincing evidence that the defendant's conduct was intentional, fraudulent, malicious, or reckless, involving "the most egregious of wrongs." *Sanford v. Waugh & Co., Inc.*, 328 S.W.3d 836, 849 (Tenn. 2010).

Hodge has plausibly alleged that Vaughn acted intentionally, maliciously, or recklessly.

---

[4] Ambiguities like the one in § 29-20-205(2) are notoriously frequent when the statute is formatted as a list. *See, e.g.*, Mark Cooney, *Once Upon a Car: A Tale of Three Ambiguities*, 20 GREEN BAG 2D 143 (2017).

14

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. . . . A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Under these definitions, Hodge's account of Vaughn's use of force makes a plausible claim that Vaughn acted intentionally, maliciously, or recklessly. And as described in the complaint, Hodge's behavior was highly egregious. The punitive-damages claim will not be dismissed.

## IV

For these reasons, Blount County's motion to dismiss [D. 53] is **GRANTED** on all claims except Count 6 and **DENIED** as to Count 6; and the Officer Defendants' motion to dismiss [D. 56] is **GRANTED** as to Counts 3, 5, and 8, and **DENIED** as to Counts 1, 2, 6, 7, and 9.

**IT IS SO ORDERED.**

_/s/ Pamela L. Reeves_
**UNITED STATES DISTRICT JUDGE**