UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JUDY HODGE, on behalf of herself and the ESTATE OF LARRY HODGE, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) No. 3:16-CV-317 |
| | ) REEVES/POPLIN |
| BLOUNT COUNTY, TENNESSEE; and HENRY VAUGHN, in his individual capacity, | ) ) ) ) |
| *Defendants*. | ) ) |

## MEMORANDUM OPINION AND ORDER

On June 10, 2015, Larry Hodge, a 67-year-old man with dementia, was driving his truck on a narrow road in Blount County, Tennessee. At one point, the side mirror on Hodge's truck made contact with the side mirror of an oncoming SUV driven by Robin Bailey. Both vehicles were damaged to varying degrees. Bailey called 911, and a dispatch went out alerting law enforcement to an alleged hit-and-run.

Henry Vaughn, an off-duty property and evidence technician employed by the Blount County Sheriff's Department (BCSD), responded to the call. When Vaughn spotted a vehicle matching the description from dispatch, he activated his lights and sirens, and proceeded to conduct a traffic stop. The parties dispute the details of the ensuing encounter. But under either version of the facts, Hodge ended up handcuffed, arrested, and transported to Blount County Jail, where he was charged with leaving the scene of an accident and resisting arrest. He suffered a road rash to his forehead, among other injuries. Larry Hodge's already poor health declined in the months following the incident, and he died on December 27, 2015.

1

On June 10, 2016, Judy R. Hodge ("Plaintiff") initiated this civil-rights suit on behalf of herself and the estate of Larry Hodge, her late husband. In February 2017, an amended complaint was entered, and all defendants moved to dismiss the claims against them. The motions were granted in part and denied in part, and all defendants except Blount County, Tennessee, and Henry Vaughn were dismissed [D. 84].

Now before the Court is Vaughn's motion for summary judgment [D. 71], in which he moves for summary judgment on the five remaining claims against him:

- Wrongful seizure or use of excessive force in pointing a gun at Hodge, in violation of the Fourth Amendment (Count 1);
- Use of excessive force in removing Hodge from his vehicle, in violation of the Fourth Amendment (Count 2);
- Assault and battery (Count 6);
- Intentional infliction of emotional distress (Count 7); and
- Loss of consortium (Count 9).

Plaintiff responded [D. 99] to the motion, and Vaughn replied [D. 101]. For the reasons that follow, Vaughn's motion for summary judgment will be granted in part and denied in part.

# I

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether this burden is satisfied, the Court

must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994). Once the movant has satisfied its initial burden, the other party must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847. In doing so, the non-moving party may not rely on the pleadings alone, but must instead point to "specific facts" in the record that create a genuine issue for trial. *Metiva*, 31 F.3d at 378-79.

In ruling on a motion for summary judgment, the Court's function is limited to determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The Court need not scour the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). But the Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter, and any genuine disputes of fact that do exist must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 249; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

In his motion for summary judgment, Vaughn levels four primary arguments against Plaintiff's suit: (1) Vaughn is entitled to qualified immunity for Plaintiff's constitutional claims, because the undisputed material facts demonstrate that he did not violate any constitutional right of Plaintiff, and/or he did not violate any "clearly established" right based on the particular facts of the case; (2) Plaintiff cannot satisfy the elements of assault and battery; (3) Plaintiff cannot satisfy the elements of intentional infliction of emotional distress; and (4) because all of Plaintiff's underlying claims fail, her loss of consortium claim should also be dismissed. The Court will address each argument in turn.

## II

Plaintiff's constitutional claims (Counts 1 and 2) have been brought under 42 U.S.C. § 1983. Section 1983 provides a federal cause of action against state officials for the deprivation of constitutional rights under color of state law. But only certain defendants can be held liable for damages in a Section 1983 suit. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In determining whether a particular defendant is entitled to qualified immunity, the Court must decide (1) whether the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the defendant's alleged misconduct. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may address these prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When a defendant claims qualified immunity, the "ultimate burden of proof is on the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (emphasis added).

### A

Cochran first alleges that Vaughn used excessive force in violation of the Fourth Amendment, when he approached Hodge at gunpoint[1] "without cause or provocation" (Count 1) [D. 51, at 30]. The Supreme Court's Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

---

[1] The parties dispute where Vaughn's gun was aimed: at the ground, like Vaughn says [D. 98-5, at 31, 35], or at Hodge and his vehicle, as Bailey stated [D. 98-1, at 33]. For purposes of ruling on Vaughn's motion for summary judgment, the Court adopts Plaintiff's version, and assumes that the gun was pointed directly at Hodge.

physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (*citing Terry v. Ohio,* 392 U.S. 1, 22-27 (1968)). Even so, an officer's use of threats—including the brandishing of a weapon—must still be objectively reasonable. *Id.* at 397. *See Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) (recognizing that detaining an individual at gunpoint can amount to a constitutional violation). In applying the Fourth Amendment's "reasonableness" standard, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (*quoting Graham*, 490 U.S. at 396). In doing so, a court must consider the facts and circumstances of the particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Plaintiff says that none of these factors justify Vaughn confronting Hodge at gunpoint: Hodge was suspected of a misdemeanor offense; he was sitting in his stopped vehicle with his hands on the steering wheel; and he was not actively resisting arrest or trying to flee. Vaughn disagrees. Vaughn says that he approached Hodge with his gun drawn because he was uncertain what state of mind Hodge might be in after fleeing the scene of a hit-and-run. Based on the dispatcher's report, Vaughn believed that he was approaching an individual who had left the scene of an accident and then continued driving at a "high rate of speed." [D. 71-4][2]. He also knew that the complainant had been advised to stay away from the suspect, and he had reason to believe that Hodge might attempt to flee. Plaintiff does not dispute that after Vaughn initiated the traffic stop, Hodge's vehicle lurched forward twice before finally stopping [*see* D. 98-5, at 29-31; D. 98-8, at 8; D. 102, at 3]. And the fact that Hodge was a hit-and-run suspect gave Vaughn "*by definition …*

---

[2] Vaughn's Exhibit 4 is a CD-ROM that was filed manually with the Court. It contains a copy of the relevant audio from the E911 dispatch with the officers on June 10, 2015.

reason to think that [he] might attempt 'to evade arrest by flight.'" *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011) (citation omitted) (emphasis added). Based on the totality of the circumstances, an officer in Vaughn's position could reasonably believe that Hodge was considering leaving the scene. The question then is whether this belief justifies approaching Hodge's vehicle at gunpoint.

The Sixth Circuit addressed a similar issue in *Giannola v. Peppler*, 142 F.3d 433 (6th Cir. Feb. 23, 1998) (Table). In that case, a police officer attempted to conduct a traffic stop on an 81-year-old man who had been driving 10 to 20 miles per hour below the speed limit. The man did not pull over for several minutes, but continued to drive at a slow rate of speed, obeying all traffic signals. When the officers finally forced him to the side of the road, they approached his vehicle with their guns drawn, in part due to their concern that the man had been attempting to evade them. The Sixth Circuit upheld the district court's finding that the officers' show of force was objectively reasonable under the circumstances:

> In light of the danger police officers frequently encounter during routine traffic stops, and the fact that from the officers' contemporaneous perspective, the plaintiff appeared to be refusing a lawful order to pull over, we are untroubled by the fact that the officers initially approached plaintiff's vehicle with their guns drawn.

*Id.* at *3 (internal citation omitted) (cleaned up).

In this case, as in *Giannola*, approaching at gunpoint was probably not warranted. In fact, approaching in this manner may actually have fomented, rather than diffused, any tensions that were brewing. Even so, the reasonableness of a particular show of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. And the Supreme Court has been clear that the district court's use-of-force analysis must allow for the fact that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of

6

force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Thus, "it is not for the Court to substitute its own notion of the 'proper police procedure for the instantaneous decision of the officer at the scene.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009) (*citing Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000)).

In this case, the Court finds that Vaughn's show of force in approaching with his gun drawn was not constitutionally excessive. Accordingly, the Court does not need to determine whether the constitutional right alleged was clearly established at the time of Hodge's arrest. Vaughn is entitled to summary judgment on Count 1.

**B**

In ruling on defendants' motions to dismiss in September 2017, this Court remarked in a footnote that Count 1 better resembles a wrongful-seizure claim [D. 84, at 5 n.1]. Accordingly, Plaintiff restyled this count as a wrongful-seizure claim in her response to Vaughn's motion for summary judgment [D. 98, at 12]. Vaughn objects to the recharacterization, but contends that he is entitled to summary judgment under this analysis as well [D. 102, at 6-9]. Upon further consideration, the Court finds that its earlier suggestion is not supported by the record—Plaintiff's Amended Complaint contains no allegations that the stop or the arrest was unconstitutional. But even under a wrongful-seizure analysis, Vaughn is entitled to summary judgment on this Count.

In her response, Plaintiff says that Vaughn conducted the traffic stop in a manner that "far exceeded the reasonable suspicion of an objective officer." [D. 98, at 16]. She seems to say that because Hodge was not suspected of an arrestable offense, Vaughn violated Hodge's constitutional rights when he approached him at gunpoint, thus turning what should have been an investigatory *Terry*[3] stop into a full-blown seizure. In reply, Vaughn contends that he had authority to arrest

---

[3] *Terry v. Ohio,* 392 U.S. 1 (1968).

7

Hodge for the suspected offense, and that, based on the totality of the circumstances discussed above, he had the right to initiate the arrest with his gun drawn.

First, the Court wants to be clear that Hodge was in fact suspected of an arrestable offense.[4] It is true that for many misdemeanor traffic offenses in Tennessee, the investigating officer is required to issue a traffic citation, rather than arrest the suspect. *See* Tenn. Code Ann. § 55-10-207(b)(1). However, there are certain statutory exceptions to this mandate, including in cases where the person is charged with "failure to stop in the event of an accident causing death, personal injury or damage to property." Tenn. Code Ann. § 55-10-203(a)(4). *See id.* § 55-10-207(h)(1). In this case, it is undisputed that Hodge was suspected of engaging in a hit-and-run that caused some amount of vehicular damage [D. 71-4; D. 98-5, at 36-37].

Second, the Sixth Circuit has stated that "the use of guns [and] handcuffs … do not automatically transform a *Terry* stop into an arrest," so long as the particular display of force is "warranted by the circumstances." *Smoak v. Hall*, 460 F.3d 768, 781 (6th Cir. 2006). The Court has already determined that Vaughn acted reasonably when he approached Hodge at gunpoint—i.e., this show of force was reasonably "warranted by the circumstances." Because Vaughn is entitled to summary judgment on Count 1 under either analysis, Count 1 will be dismissed.

## C

Plaintiff next alleges that Vaughn used excessive force in violation of the Fourth Amendment when he physically removed Hodge from his truck (Count 2). In order to defeat Vaughn's claim of qualified immunity, Plaintiff must show that the right alleged was clearly established at

---

[4] As Plaintiff points out, this Court has previously stated that "Vaughn had no business trying to arrest Larry [Hodge]." [D. 84, at 5]. But this quote is drawn from the Court's order disposing of defendants' motions to dismiss, in which the Court was required to look solely at the facts in the complaint and accept all of Plaintiff's factual allegations as true. The standard for summary judgment is different, and the Court now has significantly more information before it.

the time of the incident, and that Vaughn's use of force was objectively unreasonable in light of the circumstances.

A "clearly-established" right in this Circuit is one that has been decided by the Supreme Court, the Sixth Circuit, or the highest court of the state in which the alleged violation occurred. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The clearly established law must be "'particularized' to the facts of the case" so that officials have fair warning of what the law prohibits. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (*citing Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). In the Sixth Circuit, "[a] suspect's right to be free from excessive force from arresting officers is clearly established." *Malory v. Whiting*, 489 F. App'x 78, 85 (6th Cir. 2012). *See also Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006) (citing cases). This is true even when a suspect has not been handcuffed and is not being perfectly compliant. *Malory*, 489 F. App'x at 85. The Sixth Circuit has held that when a suspect has made only a "mild show of resistance" or "minor stubbornness," it is excessive for an officer to restrain the suspect by "tackling, stepping on, and punching him." *Id.* at 85-86. This right was clearly established at the time of Hodge's arrest. On the other hand, it has *not* been "'clearly establish[ed]' that it is a violation of the law for an officer to 'take down' a suspect who is resisting arrest." *Stanfield v. Lima*, No. 17-3305 (6th Cir. Mar. 15, 20018). Thus, this case turns on whether Hodge made more than a "mild show of resistance," when viewed from the perspective of a reasonable office at the scene.

There is no doubt that "in a lawful traffic stop, police officers are empowered to order a vehicle's occupant out of the vehicle." *Giannola v. Peppler*, 142 F.3d 433, at *3 (6th Cir. Feb. 23 1998) (Table). But there is also no doubt that an officer ordinarily has to give the suspect an opportunity to comply with that command before the officer may resort to physical force. *See Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (holding that the officers used excessive force when

9

they ordered plaintiff out of her vehicle and then, before she could comply, pulled her from her car onto the ground). The rare exception can be found in cases where the suspect was actively maneuvering his vehicle to evade law enforcement, or had just led the police on a high-speed chase. *See Hayden v. Green*, 640 F.3d 150, 151-53 (6th Cir. 2011) (considering the fact that the suspect had blatantly disregarded "a rather obvious police indication to stop his vehicle" in the excessive force analysis); *Dunn v. Matatall*, 549 F.3d 348, 355 (6th Cir. 2008) (taking into account "the heightened suspicion and danger brought about by the car chase" in determining whether the forcible removal of the suspect from his vehicle was objectively reasonable).

In this case, the parties agree that Vaughn asked Hodge to get out of his vehicle, and that Hodge did not do so. But the parties disagree as to the level of resistance, if any, that he exhibited. According to Plaintiff, Hodge likely did not recognize Vaughn as a law enforcement officer since he was not wearing a "uniform, shirt, hat, or anything else that would make him immediately recognizable by the public as a law enforcement officer." [D. 51, at 18]. Vaughn also did not identify himself as a BCSD officer, but simply approached at gunpoint and ordered Hodge out of the vehicle. At that point, Hodge was sitting motionless with his hands on the steering wheel, "not a danger to anyone" and "not going anywhere." [D. 98, at 21]. Peggy Hamilton, a passerby, overheard Vaughn and Hodge's conversation. She testified that each time Vaughn asked Hodge to get out of the vehicle, Hodge responded, "What did I do?" [D. 98-7, at 11-12]. (Plaintiff says that Hodge was simply confused because of his dementia.) Hamilton further testified that she did not hear Hodge use any profanity, and that he kept his hands on the steering wheel throughout the exchange [*Id.* at 12]. Then, as Bailey testified, Vaughn "violently jerked" Hodge down to the ground, where he "hit his nose hard on the pavement." [*Id.* at 42, 45].

Defendant Vaughn's version of the story is markedly different. Vaughn says that he was wearing a black Class B uniform with an embroidered BCSD logo, and that he immediately identified himself as a BCSD deputy. When he ordered Hodge out of his truck, Hodge responded to his command with expletives, "kept saying that he hadn't done nothing wrong," and then moved his hands from the steering wheel to brace himself against the truck's doorframe [D. 98-5, at 47]. Bailey testified that Hodge "swiped his arm out at the officer." [D. 98-1, at 31]. At that point, Vaughn decided to physically remove Hodge from his vehicle in order to neutralize the "rapidly escalating volatile situation." [D. 71-3, at 4]. He says that, in the process, Hodge's foot got caught on the doorway, and the two of them fell to the ground [D. 98-5, at 49]. It was this fall, according to Vaughn, that caused Hodge's injuries.

Even viewing the record in the light most favorable to Plaintiff, there is no genuine dispute about the fact that Vaughn *was* wearing a uniform, which included an embroidered Blount County Sheriff's Department insignia on the shirt [D. 72, at 9; D. 71-1, at 3; D. 98, at 4; D. 102-3, at 3]. Further, two witnesses testified that Vaughn was clearly a law enforcement officer [*see* D. 71-1, at 3; 71-5, at 2]. The only witness to express any doubts as to Vaughn's identity arrived on the scene after the traffic stop had been initiated, and, at that time, only saw Vaughn from the back [D. 102-3, at 2]. Once Vaughn turned around, however, the witness saw the emblem on his uniform and realized that he was an officer [*Id.* at 3]. Plaintiff simply has not pointed to any specific evidence to support her contention that Hodge *may* have been unaware that Vaughn was an officer. *See Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) (stating that a nonmovant "cannot survive summary judgment through speculation or conjecture").

The remaining factual disputes are not as easily resolved. And these facts are material because they might affect the outcome of the suit under the governing law. Thus, it is not for the

11

Court to weigh the disputed facts and determine the truth of the matter. Rather, it is for the jury, at trial, to determine whether Hodge exhibited more than a "mild show of resistance" at the time Vaughn removed him from the vehicle. Because the evidence before the Court presents a sufficient disagreement to require submission to a jury, Vaughn's motion for summary judgment on Count 2 is denied.

### III

Plaintiff has also brought state-law claims against Vaughn for assault and battery (Count 6), intentional infliction of emotional distress (IIED) (Count 7), and loss of consortium (Count 9). The Court will address each claim in turn.

### A

Count 6 is best analyzed in two parts. Plaintiff alleges that Vaughn committed an *assault* when he approached Hodge with his gun drawn, and a *battery* when he physically removed Hodge from his truck. As to the assault claim, the Court has already determined that Vaughn's use of the gun was objectively reasonable in light of the circumstances. Accordingly, Vaughn is also entitled to qualified immunity on the state-law assault claim. *Willis v. Neal*, 2006 WL 1129388, at *2 (E.D. Tenn. Apr. 24, 2006) (Mattice, J.), *aff'd*, 247 F. App'x 738 (6th Cir. 2007) (noting that in Tennessee courts, "the same defense of qualified immunity that is available to police officers in causes of action under § 1983 is also available in causes of action under Tennessee state law").

Conversely, Vaughn is not entitled to summary judgment as to Plaintiff's battery claim because it arises out of the same use of force alleged in Count 2. *See Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010) ("Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the

same for both causes of action."); *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979) (holding that an arresting officer "was liable for the damages caused by his excessive and unprivileged use of force under the intentional tort of battery"). Thus, Vaughn's motion for summary judgment on Count 6 is granted as to assault, and denied as to battery.

B

Plaintiff next alleges a claim for intentional infliction of emotional distress (Count 7), and requests punitive damages as to this count. To succeed on an IIED claim, the plaintiff must show by competent evidence that the defendant's conduct was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the [injured party]." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).

As has been discussed, genuine issues of material fact exist concerning the reasonableness of Vaughn's actions in physically removing Hodge from the vehicle. But if the events played out as Plaintiff says, Vaughn's conduct could certainly be viewed as "atrocious and utterly intolerable in a civilized society." *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997) (*citing* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). This finding is not revolutionary; at least three circuits have recognized that "a serious case of excessive force can constitute outrageous behavior such that it satisfies a claim of intentional infliction of emotional distress." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 917 (D.C. Cir. 2015) (internal quotation marks and citation omitted) (*citing Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996) (applying New York law); *Robins v. Harum*, 773 F.2d 1004, 1011 (9th Cir. 1985) (applying Washington law)).

To prove the third element, Plaintiff submitted an affidavit in which she detailed her husband's deteriorating mental state in the weeks and months following his arrest [D. 98-11]. Vaughn

says that this evidence is insufficient because, as a lay witness, Plaintiff cannot "definitely demonstrate" that Hodge's mental decline was proximately caused by Vaughn's actions, rather than his pre-existing health problems [D.102, at 25]. The Court disagrees. In the IIED context, evidence of the mental-injury element may be established through "the testimony of lay witnesses acquainted with the plaintiff such as family, friends, and colleagues…." *Rogers*, 367 S.W.3d at 210. *See also Miller v. Willbanks*, 8 S.W.3d 607, 613 (Tenn. 1999) (adopting the majority view that "expert proof is generally not necessary to establish the existence of a serious mental injury"). As Hodge's wife, Plaintiff certainly knew him well enough to testify as to his mental state, and her affidavit is sufficiently detailed to support a finding that Hodge suffered a serious mental injury.

As to the causation issue, the Court agrees that at least some of Hodge's mental decline *may* have been caused by his dementia, rather than by the incident with Vaughn. But Vaughn has not met his burden of showing that there is no genuine dispute as to this issue, and "[p]roximate causation, or the lack of it, is generally a question of fact to be decided by a jury." *Toth v. Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir. 1984). Further, the Tennessee Supreme Court has specifically held that "a jury is generally capable of determining whether a claimant has sustained a serious mental injury as a proximate result of the intentional conduct of another person." *Miller v. Willbanks*, 8 S.W.3d 607, 613 (Tenn. 1999). *See also Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir. 1985) ("A cause may be proximate although it and another cause act at the same time or in combination to produce the occurrence."). Vaughn may well prevail on Plaintiff's IIED claim, but, in light of the foregoing, that issue is for the jury to determine at trial. At this stage of the proceedings, Vaughn is not entitled to summary judgment on Count 7.

## C

Finally, Plaintiff alleges loss of consortium (Count 9) against Vaughn under Tennessee state law. Loss of consortium, though its own cause of action, is an element of damages when the other spouse is injured. *See, e.g.*, *McPeek v. Lockhart*, 174 S.W.3d 751, 755 (Tenn. Ct. App. 2005) (discussing Tenn. Code Ann. § 25-1-106). "While a loss of consortium claim is a derivative claim, it is also a distinct and separate cause of action from that of the injured spouse's claim." *Id.* However, recovery on this type of claim is only possible if the defendant is actually liable for the injuries to the spouse. *See Wentz v. Best W. Int'l, Inc.*, 2007 WL 869620, at *4 (E.D. Tenn. Mar. 20, 2007) (Varlan, J.) (citing Tennessee cases). Because two of Plaintiff's state-law claims have survived Vaughn's motion for summary judgment, Plaintiff's claim for loss of consortium may also proceed to trial.

## IV

For the foregoing reasons, Henry Vaughn's motion for summary judgment [D. 71] is hereby **GRANTED in part and DENIED in part**. Count 1 is **DISMISSED with prejudice**. Count 6 is **DISMISSED with prejudice** as to the assault claim only. Plaintiff may proceed to trial on Counts 2, 6 (battery only), 7, and 9.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE