UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

JUDY HODGE, on behalf of herself and the )
ESTATE OF LARRY HODGE, )
                                        )
      *Plaintiff*, )
                                        )
v. )          No. 3:16-CV-317
                                        )          REEVES/POPLIN
BLOUNT COUNTY, TENNESSEE and )
HENRY VAUGHN, in his individual )
capacity, )
                                        )
      *Defendants*. )

## MEMORANDUM AND ORDER

"It's déjà vu all over again." YOGI BERRA, THE YOGI BOOK: "I DIDN'T REALLY SAY EVERYTHING I SAID" 30 (Workman Publishing 1998). This case has been replete with motions. This time, Defendants' joint motion for summary judgment [D. 131] is before the Court. Yet, the Court has already ruled on similar arguments. Again, Defendants seek summary judgment on Plaintiff's four remaining claims:

- Use of excessive force in removing Hodge from his vehicle, in violation of the Fourth Amendment (Count 2);
- Battery (Count 6);
- Intentional infliction of emotional distress (Count 7); and
- Loss of consortium (Count 9).

Defendants argue that "new" evidence changes things.[1] It does not. Defendants' motion [D. 131] will be denied.

---

[1] "The Defendants believe that this Court and the Sixth Circuit Court of Appeals in the qualified immunity motion made their decisions without the benefit of complete factual testimony or the benefit of expert testimony regarding the reasonableness of the use of force in this particular situation." [D. 136, p. 2].

1

## I. Background

The factual background of this case has been reviewed before. [D. 110 115]. The Court will briefly summarize the events that bring the case to this point.

On June 10, 2015, Larry Hodge, a 67-year-old man with vascular dementia and other ailments, was driving his truck on a narrow road in Blount County, Tennessee. [D. 132, p. 2; D. 135, p. 7]. The side mirror on Hodge's truck contacted the side mirror of an oncoming SUV driven by Robin Bailey, and both vehicles were damaged to varying degrees. [D. 132, pp. 2–3; D. 135, p. 7]. Hodge continued driving after the minor collision, so Bailey called 911. [D. 132, pp. 2–3; D. 135, p. 7]. A dispatch went out alerting law enforcement to an alleged hit-and-run. [D. 132, pp. 2–3; D. 135, p. 7].

Henry Vaughn, an off-duty property and evidence technician employed by the Blount County Sheriff's Department (BCSD), responded to the dispatch. [D. 132, p. 3; D. 135, pp. 7–8]. When Vaughn spotted a vehicle matching the description from dispatch, he activated his lights and sirens, and proceeded to conduct a traffic stop. [D. 132, p. 3; D. 135, p. 8]. Vaughn approached Hodge's truck with his gun drawn. [D. 135, p. 8].

What happened during that traffic stop is a matter of dispute. Vaughn asked Hodge to exit his truck several times. [D. 132, p. 3; D. 135, p. 8]. Vaughn, at one point, claimed that Hodge cursed at him each time. [D. 71-3, p. 3]. But Peggy Hamilton, a passerby who observed the exchange, says that Hodge asked, "What did I do?" each time and never used profanity. [D. 135, p. 9; D. 135-7, p. 14]. Moreover, Hamilton says that Hodge kept his hands on the steering wheel. [D. 135, p. 9]. Vaughn decided to remove Hodge from his truck. Vaughn says that, as he removed Hodge from the truck by his collar, Hodge's foot got hung up in the door and he fell face-first to the pavement. [D. 132, p. 4; D. 135, p. 9]. Bailey says that Vaughn pulled Hodge straight to the

ground.[2] [D. 135, p. 10; D. 135-1, pp. 55–56, 61]. In any case, Hodge "hit his nose hard on the pavement" and suffered other injuries. [D. 135, p. 10]. Hodge was handcuffed, arrested, and transported to Blount County Jail, where he was charged with leaving the scene of an accident and resisting arrest. Thereafter, Hodge's already poor health continued to decline until he died on December 27, 2015. [D. 135, pp. 10–11].

On June 10, 2016, Hodge's wife filed suit, alleging, among other things, a claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. [D. 1]. Following extensive motion practice on various matters, Vaughn moved for summary judgment, Blount County moved for sanctions against counsel for Plaintiff, and counsel for Plaintiff moved to sanction Blount County for their motion for sanctions. [D. 71, 103, 108]. The Court ruled on Vaughn's motion for summary judgment and held, among other conclusions, that Vaughn was not entitled to qualified immunity. [D. 110]. Vaughn filed an interlocutory appeal, and this Court stayed the case pending the resolution of the appeal. The denial of qualified immunity was affirmed. [D. 115, 116].

On September 27, 2019, this Court denied the parties' cross-motions for sanctions that had been filed prior to the appeal and stay. [D. 117]. The matter was set for trial. [D. 119].

On February 18, 2020, the Defendants filed a joint motion for summary judgment. [D. 131]. The Court held a hearing on this motion [D. 133]. Thereafter, Plaintiff responded [D. 135] and Defendants replied [D. 136]. Though the Court scheduled a second motion hearing, the hearing was cancelled in light of the ongoing pandemic. *See* E.D. Tenn. SO-20-06. Nevertheless, the matter is ripe for adjudication on the briefs of the parties, and a hearing is not necessary.

---

[2] When asked if Vaughn "violently jerk[ed]" Hodge out of his vehicle, Bailey said yes. But when asked if Hodge could have fallen, Bailey also said yes. [D. 132, p. 4].

3

## II. Standard of Review

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016). To determine whether this burden is satisfied, the Court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir. 1994). Once the movant has satisfied its initial burden, the other party must show that a genuine issue of material fact still exists. *Stiles*, 819 F.3d at 847. The non-moving party may not rely on the pleadings alone but must instead point to "specific facts" in the record that create a genuine issue for trial. *Metiva*, 31 F.3d at 378-79.

In ruling on a motion for summary judgment, the Court's function is limited to determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The Court need not scour the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). But the Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter, and any genuine disputes

4

of fact that do exist must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 249; *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

## III. Analysis

Defendants argue that they are entitled to summary judgment on each remaining claim. Again, each will be addressed in turn.

### A. Excessive Force (Count 2)

Defendants first attack Plaintiff's excessive force claim under 42 U.S.C. § 1983. Plaintiff claims that Vaughn used excessive force when he physically removed Hodge from his truck in violation of Hodge's Fourth Amendment rights.

The Supreme Court's Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (*citing Terry v. Ohio,* 392 U.S. 1, 22–27 (1968)). But any use of force must be reasonable, not excessive. *See Malory v. Whiting*, 489 F. App'x 78, 85 (6th Cir. 2012); *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). In other words, an officer's use of force must be "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

In applying the Fourth Amendment's "reasonableness" standard, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (*quoting Graham*, 490 U.S. at 396). This requires a court to consider the facts and circumstances of the particular case, "including the severity of the crime at issue, whether

5

the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Here, the crime was not severe. As the Sixth Circuit remarked, "Vaughn suspected Hodge of a hit-and-run accident involving minor property damage—a mere misdemeanor in Tennessee." *Hodge v. Blount Cty.*, 783 F. App'x 584, 588 (6th Cir. 2019) (citing Tenn. Code Ann. §§ 55-10-102, 55-10-203(a)(4), 55-10-207(b)(1) & (h)(1); *Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009) ("Relatively speaking, these are not particularly serious crimes and none of them involve violence.")). The parties also agree that Vaughn directed Hodge to get out of his vehicle and Hodge did not do so. But the agreement ends there.

On one hand, Defendants have painted a picture of a belligerent arrestee and an accidental fall. In addition to failing to exit the vehicle, Defendants state that Hodge swiped his arm out at Vaughn. [D. 131-9, p. 45, 48]. Vaughn, at one point in the case, insisted that Hodge repeatedly directed expletives at him. *See* [D. 71-3, p. 3]. Upon Hodge's noncompliance, Vaughn states that he opened Hodge's truck door and restrained his wrist. [D. 131-1, p. 2, ¶¶ 11, 13]. Because Hodge braced himself against the vehicle frame, Vaughn "grabbed his collar to bring him out of the vehicle." [*Id.* at ¶ 12]. But as Vaughn was getting Hodge out of the vehicle, Hodge's right foot hung up on the doorway and the weight and momentum caused them to fall to the ground. [*Id.* at ¶ 14]. In the ensuing fall, Hodge landed face down with Vaughn's left hand underneath him. [*Id.* at ¶ 15]. Vaughn's left knuckles were scratched, and his right hand was jarred trying to brace as the two went to the ground. [*Id.*].

On the other hand, Plaintiff paints a picture of an overzealous officer exerting great force over a confused, elderly man during his only arrest of 2015. Vaughn, an off-duty evidence technician, approached Mr. Hodge's truck with "gun drawn" and "asked Mr. Hodge at gunpoint

6

to get out of his truck." [D. 135-5, pp. 5–7, 34, 39; D. 135-6, ¶ 11; D. 135-1, p. 46]. Hamilton, another observer, heard that Vaughn directed Hodge from his truck three times. [D. 135-7, p. 14]. Three times, Hodge, with his hands on the steering wheel at "[t]en and two," responded by asking, "What did I do?" [*Id.* at 13–14]. At no point did Hodge use profanity. [*Id.* at 14]. Nevertheless, as Bailey recalls, Vaughn "pulled Hodge straight down to the ground" and Hodge's face "hit the pavement hard." [D. 135-1, pp. 55–56, 61]. At one point, Bailey even agreed to the characterization that Vaughn "violently jerked" Hodge to the ground. [*Id.* at 56]. In this version, Vaughn exercised a great degree of force even though "Hodge was an elderly man and obviously confused—not intoxicated, belligerent, or even argumentative." *Hodge*, 783 F. App'x 584, 588 (6th Cir. 2019).

Defendants challenge Plaintiffs more sinister characterization of the events in four ways. First, Defendants argue that Bailey "recanted" the characterization that Vaughn "violently jerked" Hodge from his truck. While Bailey certainly equivocates, she does not "recant." *See Recant*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To withdraw or renounce (prior statements or testimony) formally or publicly"). Just as Plaintiff's counsel suggested a characterization of the events to Bailey, Defendants' counsel did the same. In both instances Bailey neither fully adopts nor fully denies either characterization. *Compare* [D. 131-9, p. 74 ("Violently would be Mr. Baker's words. But I saw him pull him to the ground.")] *with* [*id.* ("Q: Now, you say that you saw him pull him to the ground, but could it also have been that they slipped and fell to the ground? A: It could have been.")]. A jury must make its own credibility determinations about Bailey's account of the events and weigh it against the testimony of other witnesses.

Second, Defendants suggest that Hamilton's testimony "does not support that Hodge was not actively resisting." [D. 136, p. 4]. Setting aside the confusing form of Defendants' argument,

7

Defendants acknowledge that "Hamilton did state that she never saw Hodge resisting in an unsworn statement." [*id.* (citing [D. 135-9, p. 7])]. The foundation of Defendants argument is that Hamilton "could not have seen Mr. Hodge resist as she looked away to drive around the vehicles." [D. 136, p. 4]. But a jury must make its own credibility determinations about Hamilton's account of the events and weigh it against the testimony of other witnesses.

Third, Defendants suggest that "new" evidence, the affidavit and report of Anthony E. Thomas—"a qualified Use of Force instructor/expert"—puts the dispute to rest.[3] [D. 131-2; D. 136, pp. 4–6]. Applying various use of force theories, Thomas suggests that Vaughn's use of force was "proportional" and concludes "that Hodge's injuries were caused by his 'resistance and subsequent fall to the ground.'" [D. 132 (citing D. 131-2)]. But Thomas's report sheds no new light on what *actually* happened along the side of the road. Rather, it expresses an opinion on the propriety of Vaughn's actions under one version of the events. Moreover, Thomas's opinion rests on credibility determinations from secondhand accounts. Thomas's opinion, if admissible at trial, is properly weighed by a jury.

Fourth, Defendants' assert that Hodge made recorded statements soon after his release from jail that, along with an affidavit of Hodge's interviewer at the time, "confirm[] Vaughn's version of the amount of force used and how Hodge ended up on the ground." [D. 136, pp. 6–7]. This argument and this evidence appear for the first time in Defendant's *reply* brief.[4] Moreover, just as Defendants used their reply brief to re-litigate the Sixth Circuit's decision in this case, Defendants

---

[3] The Court will not address Defendants' backhanded attempt to reargue the Sixth Circuit's qualified immunity decision in this case. [D. 136, pp. 5–6].

[4] In Defendants' opening brief, Defendants state: "Only four persons were present to have admissible testimony as to the facts in this matter. Larry Glen Hodge ("Hodge") is deceased; therefore, *the facts in this matter are provided from the testimony of the remaining three witnesses*, Vaughn, Robin Bailey ("Bailey") and Peggy Hamilton ("Hamilton")." [D. 132, p. 2 (emphasis added)]. Apparently, Defendants have recanted that position. However, the Court does note that a transcript of this interview was filed previously in Blount County's motion for sanctions. [D. 103-4].

8

use it to pre-litigate the admissibility issues surrounding this evidence.  Defendants' argument is improper.

The Local Rules of this Court state that a reply brief "shall *directly reply* to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1.  This is because "[b]oth efficiency, and fairness to one's adversary, militate in favor of requiring a movant's opening brief to identify with certainty *all* the arguments and *evidence* which the movant believes supports his position." *Darnell v. Woodbourne Investments, LLC*, No. 2:17-CV-00103, 2018 WL 4039287, at *3 (E.D. Tenn. Aug. 23, 2018) (quoting *Int'l-Matex Tank Terminals-Ill. v. Chem. Bank*, 2009 WL 1651291, *2 (W.D. Mich. June 11, 2009) (emphasis added).  Consequently, courts routinely do not consider issues or evidence raised for the first time in a reply. *See Darnell*, No. 2:17-CV-00103, 2018 WL 4039287, at *3; *Walter v. Auto-Owners Mut. Ins. Co.*, No. 3:15-CV-535, 2018 WL 3848400, at *2 (E.D. Tenn. Aug. 13, 2018); *NetJets Large Aircraft, Inc. v. United States*, 80 F. Supp. 3d 743, 765 (S.D. Ohio 2015); *Int'l-Matex*, 2009 WL 1651291, *2; *see also Tonguette v. Sun Life & Health Ins. Co.*, No. 2:12-CV-6, 2013 WL 1818620, at *4 (S.D. Ohio Apr. 29, 2013) (collecting cases in which district courts declined to consider arguments raised for the first time in reply briefs).  Moreover, even if the Court did consider this evidence, it is equally as equivocal and unclear as the previous accounts of the events that the Court has just discussed. *Compare* [D. 136-1, ¶ 4] *with* [D. 136-1, ¶ 5–6].

In short, a jury must untangle the lingering factual questions and decide what happened along the side of the road.  Defendants' "new" opinion evidence may or may not be compelling to the jury that makes these determinations, but it certainly does not warrant summary judgment.  After revisiting the varying accounts in this case, the Court concludes what it has several times

9

before—the excessive-force question should be sorted out by a jury. Defendants' motion for summary judgment on this claim will be denied.

### B. Battery (Count 6)

Defendants also challenge Plaintiff's battery claim under Tennessee law. "Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action." *Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010). In other words, Plaintiff's battery claim rises and falls with Plaintiff's excessive force claim at the summary judgment stage. Consequently, the Court finds that Defendants are also not entitled to summary judgment on Plaintiff's battery claim.

### C. Intentional Infliction of Emotional Distress (Count 7)

Defendants challenge Plaintiff's claim of intentional infliction of emotional distress ("IIED") under Tennessee law. To succeed on an IIED claim, the plaintiff must show by competent evidence that the defendant's conduct was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the [injured party]." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).

Here, the first and second elements hinge on what happened on the roadside. As the Court has discussed *ad nauseam*, conflicting testimony makes the nature and sequence of events unclear, and therefore proper for a jury as a factfinder. Defendants argue that Vaughn merely intended "to remove Hodge from his vehicle to prevent him from driving away as before." [D. 132, p. 11 (citing D. 131-1, p. 2, ¶ 9)]. Defendants argue that Plaintiff mischaracterizes Vaughn's possible violence during the events because "Hamilton testified that she did not see Vaughn strike Hodge at any time," and "Bailey testified that Vaughn never hit Hodge and that Hodge was not abused or beaten by Vaughn." [D. 132, p. (citing D. 131-9, pp. 70, 72; D. 131-10, pp. 22, 47)]. But depending on

the version of events it adopts, the jury could conclude that Vaughn's conduct was "atrocious and utterly intolerable in a civilized society." *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997) (*citing* Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 917 (D.C. Cir. 2015) (stating that "a serious case of excessive force can constitute outrageous behavior such that it satisfies a claim of intentional infliction of emotional distress." (internal quotation marks and citations omitted)).

As for the third element—a resultant serious mental injury—Defendants challenge the balance of evidence. Plaintiff previously detailed Hodge's deteriorating mental state after the incident. [D. 98-11]. Though Defendants concede that lay witness testimony may be used to prove a serious mental injury, *see Miller v. Willbanks*, 8 S.W.3d 607, 615 (Tenn. 1999), Defendants argue that Hodge's extensive medical issues, including issues that predate the incident, require expert testimony to establish the cause of his mental decline. Again, the Court disagrees.

While expert testimony could be helpful, it "is necessary *only* when the subject of examination requires knowledge or experience that persons lacking special skills do not have and that cannot be obtained from ordinary witnesses. *Id.* (citing *Lawrence County Bank v. Riddle,* 621 S.W.2d 735, 737 (Tenn. 1981) (emphasis added). Even with preexisting health issues, "a jury is generally capable of determining whether a claimant has sustained a serious mental injury as a proximate result of the intentional conduct of another person." *Id* at 613; *see also Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir. 1985) ("A cause may be proximate although it and another cause act at the same time or in combination to produce the occurrence."). The Court concludes, as it did before, that a jury may properly weigh the evidence and determine whether Vaughn's conduct, if intentional or reckless, was intolerably outrageous and caused Hodge to suffer a serious

11

mental injury. Consequently, the Court finds that Defendants are also not entitled to summary judgment on Plaintiff's IIED claim.

### D. Loss of Consortium (Count 9)

Lastly, Defendants challenge Plaintiff's loss of consortium claim under Tennessee law. Loss of consortium, though its own cause of action, is an element of damages when the other spouse is injured. *See, e.g.*, *McPeek v. Lockhart*, 174 S.W.3d 751, 755 (Tenn. Ct. App. 2005) (discussing Tenn. Code Ann. § 25-1-106). "While a loss of consortium claim is a derivative claim, it is also a distinct and separate cause of action from that of the injured spouse's claim." *Id.* However, recovery on this type of claim is only possible if the defendant is liable for the injuries to the spouse under a state-law tort claim. *See Wentz v. Best W. Int'l, Inc.*, No. 3:05-CV-368, 2007 WL 869620, at *4 (E.D. Tenn. Mar. 20, 2007) (Varlan, J.) (citing Tennessee cases); *see also Powers v. Wallen*, No. 3:12-CV-96, 2013 WL 1327135, at *10 (E.D. Tenn. Mar. 29, 2013). Because Plaintiff's Battery and IIED claims, which are Tennessee tort claims, will survive summary judgment, the Court finds that Defendants are also not entitled to summary judgment on Plaintiff's loss of consortium claim.

### IV. Conclusion

Revisiting these arguments yet again, the Court cannot help but feel that it has "come a long way down this old road." KRIS KRISTOFFERSON, *This Old Road, on* REPOSSESSED (Mercury Records 1986). Defendants' joint motion for summary judgment [D. 131] is **DENIED**.

**IT IS SO ORDERED**.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**